**MHCB (USA) LEASING AND FINANCE CORP. and Valero Refining-texas, L.P., Appellants,**

v.

**GALVESTON CENTRAL APPRAISAL DISTRICT and Galveston Central Appraisal District Review Board, Appellees.**

**Galveston Central Appraisal District and Galveston Central Appraisal District Review Board, Appellants,**

v.

**MHCB (USA) Leasing and Finance Corp. and Valero Refining–Texas, L.P., appellees.**

No. 01–06–00529–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 20, 2007.

Rehearing Overruled Nov. 6, 2007.

70

Daryl L. Moore, Moore & Kelly, P.C., JoAnn Storey, JoAnn Storey, P.C., Den-

man H. Heard, Lance H. Lubel, Justin R. Goodman, Heard, Robins, Cloud & Lubel, LLP, Houston, TX, for Appellants.

Anthony P. Brown, Michael B. Hughes, McLeod, Alexander, Powel & Apffel, P.C., Galveston, TX, for appellees.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

TIM TAFT, Justice.

In these interlocutory appeals, MHCB (USA) Leasing and Finance Corp. ("MHCB") and Valero Refining–Texas, L.P. ("Valero Refining") (together, "the protesting parties"), who were plaintiffs below, and Galveston Central Appraisal District ("the District") and Galveston Central Appraisal District Review Board ("the Board"), who were defendants below, each appeal from the trial court's order granting in part and denying in part the District's and Board's joint plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (Vernon Supp.2006). We determine (1) whether either or both of the protesting parties lacked standing to protest, and to seek judicial review of, the District's and Board's complained-of actions and (2) whether the trial court lacked jurisdiction over the protesting parties' requests for declaratory and injunctive relief when, at their core, those claims sought a determination of whether the District had the statutory authority unilaterally to rescind an appraisal agreement between itself and the protesting parties. We reverse the order and remand the cause for the trial court to render an order dismissing certain claims asserted by MHCB and to

deny the District's and Board's jurisdictional plea against certain of the claims of Valero Refining.

## Background

This dispute concerns the 2004 appraised value, for ad valorem tax purposes, of Valero Refining's Delayed Coker Unit ("the Coker Unit"), which is a refinery unit located in Texas City, Texas.

Valero Refining did not always own the Coker Unit. Before March 2004, MHCB owned the Coker Unit, and Valero Refining leased the unit from MHCB. Under its lease agreement with MHCB, Valero Refining was contractually obligated to pay property taxes on the Coker Unit. It was not until March 9, 2004 that Valero Refining purchased the Coker Unit from MHCB.

In December 2003, while MHCB still owned the Coker Unit, Robert T. Lehn, working for a private appraisal company on behalf of the District's chief appraiser,[1] wrote Valero Refining to begin the 2004 appraisal process for Valero Refining's Galveston County facilities, including the Coker Unit that it rented. Specifically, Lehn wrote to Roy G. Martin Jr., who was the vice president of Valero Corporate Services Company ("Valero Corporate"), the general partner of Valero Refining. Both Valero Corporate and Valero Refining were subsidiaries of Valero Energy Corporation ("Valero Energy").

The appraisal process for the Coker Unit that had begun in December 2003 was part of a larger appraisal of what appears to have been all of the Valero Energy corporate family's Galveston County industrial properties. Starting in March 2004, after Valero Refining had

---

1. Each appraisal district must establish an appraisal office. Tex. Tax Code Ann. § 6.05(a) (Vernon Supp.2006). "The chief appraiser is the chief administrator of the appraisal office." *Id.* § 6.05(c) (Vernon Supp.2006).

purchased the Coker Unit, Lehn and Trey Novosad, the Director of Ad Valorem Tax for Valero Energy, worked together on the appraisal values for all of the pertinent properties in Galveston County, including Valero Refinery's Coker Unit. In early May 2004, Lehn and Novosad reached an agreement to appraise the Valero Refinery Coker Unit at $60,525,090 for the 2004 tax year ("the Appraisal Agreement"). The protesting parties provided evidence that the Appraisal Agreement was memorialized in two documents: in an initial appraisal worksheet, in which Lehn had hand-written the words "MHCB—Delayed Coker Unit 60☑," and in a second appraisal worksheet, which in typed print listed the "Coker Unit at Valero Refining" as having a "grand total" value of $60,525,090.00.

On May 18, 2004, the District issued a notice of appraised value ("the first notice"), appraising the Coker Unit at $60,525,090. The protesting parties did not contest the appraised value set by the first notice, even though the new value significantly exceeded the Coker Unit's 2003 appraised value, because the 2004 appraised value was consistent with that required by the Appraisal Agreement.

Within days of the first notice's issuance, Lehn contacted Novosad to explain that the Texas City appraisal office was "under pressure" to explain certain appraisal figures. Then, on June 14, 2004, the Board held a meeting at which the District's chief appraiser submitted the 2004 records for all industrial accounts, including those for the Coker Unit. At that meeting, the Board appears to have questioned the $60,525,090 appraisal value for the Coker Unit because, shortly thereafter, on June 21, 2004, Lehn contacted Novosad to advise him that

[s]ome are laughing at the values I put on Y'all and on BP in Tx City, but more are very unhappy—saying anyone else would've put more on you two. I'm getting threatened by HCAD protests being blamed on equity and I'm getting what appears to be a possible tax unit challenge from Tx City—it's your new Coker [Unit]. . . .

On June 22, 2004, Lehn contacted Novosad to inform him that the 2004 appraisal for the Coker Unit would have to be increased by $100 million because of "information being brought to light" that Lehn "hadn't properly considered," among other things. That same day, the District issued a revised notice of appraised value for the Coker Unit ("the second notice"), which appraised the Coker Unit at $193,370,890. The record does not show that the second notice was issued upon order of the Board; rather, the evidence indicates that the second notice issued before any protest had been filed concerning the 2004 appraisal of the Coker Unit and that the second notice may have been based on revised appraisal figures submitted to the District by Lehn.

The protesting parties filed a joint protest of the District's 2004 reappraisal and second notice on July 19, 2004.[2] After having held a hearing, the Board denied the protesting parties' protest in August 2004, at which time the Board also ordered the District's chief appraiser to correct the appraisal rolls to reflect an appraised value of $240,000,000 for the Coker Unit for 2004. The protesting parties then filed suit for judicial review of the Board's decision in the protest and asserted claims, within the same suit, against the District based on its unilaterally having rejected the Appraisal Agreement.

In their live petition, the protesting parties asserted two alternative sets of allegations. Primarily, they alleged as follows:

---

2. The protest notice incorrectly listed Valero Refining as the lessee of the Coker Unit.

• that the District had acted "outside its statutory authority" and "abused its discretion" by having issued the second notice in violation of the Appraisal Agreement, rendering the second notice invalid, and

• "because [the District] acted outside its authority" in rejecting the Appraisal Agreement, the Board also "acted outside its authority and abused its discretion by denying [the protesting parties'] protest regarding the invalidity and void character" of the second notice that the District issued after having rejected the Appraisal Agreement.

We will refer to these allegations as the protesting parties' "Primary Allegations." In conjunction with the Primary Allegations, the protesting parties sought declarations that

• the Appraisal Agreement was a "binding contract" for an appraisal value of $60 million;

• the District's second notice of the appraised value was void;

• the District's chief appraiser had abused his discretion and exceeded his authority by having issued the second notice, and that notice was thus "invalid and void";

• the District had "breached its contractual agreement with [the protesting parties]";

• the Board had "exceeded its authority" by having taken any action that resulted from the second notice or increased the amount appraised in the first notice; and

• the District and Board were estopped from valuing the Coker Unit at more than the value in the Appraisal Agreement.

The protesting parties also sought injunctive relief in the following forms:

• "enforcement" of the Appraisal Agreement by correcting the 2004 tax rolls to reflect the value for the Coker Unit reached in the Appraisal Agreement;

• "relief from the Second Notice and [the District's] assessment of taxes" based upon the second notice, including the cancellation and setting aside of the Board's pertinent final order; and

• "reimbursement of other fees and fines that have accrued and/or have been assessed against [the protesting parties] because of [the District's and Board's] improper and void conduct."

The protesting parties further sought attorney's fees and court costs.

Alternatively, in the event that the trial court determined that the second notice and the Board's final determination of appraised value were valid, the protesting parties alleged that the District's and Board's actions in reappraising the Coker Unit's value were unfair and discriminatory because of a "fundamentally erroneous and unlawful plan, method and formula of valuation and assessment" that resulted in an excessive valuation that was unequal with the values assessed for comparable properties. The protesting parties further alternatively alleged that the resulting appraisal was "an unlawful levy" that created an "illegal lien" on the Coker Unit. We will refer to these allegations as the protesting parties' "Alternative Allegations." In conjunction with their Alternative Allegations, the protesting parties alleged that the equalized value of the Coker Unit was approximately $37,732,240, sought injunctive relief to have the appraisal rolls corrected to reflect "an appraised value that is equal and uniform as required by law," and sought attorney's fees.

The District and Board filed a joint plea to the jurisdiction, challenging both the protesting parties' Primary Allegations,

based on the Appraisal Agreement, and their Alternative Allegations, alleging that the reappraisals were excessive and unequal.[3] As for the protesting parties' Primary Allegations, which were based on the Appraisal Agreement, the District and Board argued that, as political subdivisions of the State (in the Board's case, as an administrative agency), they were immune from suit both for breach of contract (as they described the Appraisal Agreement) and for declarations relating to the validity of the second notice and the reappraisals. Specifically, the District and Board argued that the Property Tax Code provided the exclusive means to challenge their actions relating to appraisals and that those statutory provisions provided for only limited judicial review, not for suits for breach of contract or for the type of declaratory relief that the protesting parties sought. Therefore, the District and Board argued, governmental immunity from suit shielded them from all of the protesting parties' Primary Allegations.

As for the protesting parties' Alternative Allegations, alleging that the reappraisals were excessive and unequal, the District and Board argued that the protesting parties lacked standing to seek judicial review under the Property Tax Code either because (1) Valero Refining's parent corporation, Valero Energy, which had not properly been designated as the agent of either protesting party, had filed the appraisal protest or, alternatively, (2) even if MHCB had standing, Valero Refining did not.

The protesting parties responded, as to their Primary Allegations based on the Appraisal Agreement, that the declaratory relief that they sought did not require waiver of immunity from suit because it did not seek damages (although the pro-

testing parties sought recovery of court costs and attorney's fees) and because it sought to establish whether the District and Board acted outside their statutory authority. Specifically, the protesting parties argued that suits challenging governmental-unit or agency action that falls outside of the unit's or agency's statutory authority—which the protesting parties alleged that the failure to adhere to the Appraisal Agreement was here—did not require legislative permission to proceed and did not require exhaustion of administrative remedies (although the protesting parties had exhausted administrative remedies anyway). The protesting parties further argued that, although their challenge to the 2004 reappraisals was based upon an agreement, their suit was still one challenging the appraisal value, for which the Property Tax Code waived immunity from suit in the form of a suit for judicial review. That is, the protesting parties argued that, because the Property Tax Code undisputedly allowed them to maintain a suit for judicial review of their protest to adverse appraisal decisions, and also because they sought to determine whether the District and Board had acted illegally, it should make no difference that the basis for their protest and for the declaratory and injunctive relief that they sought was an appraisal agreement with the District.

The protesting parties then responded, as to their Alternative Allegations alleging that the reappraisals were excessive and unequal, that (1) Valero Refining was the owner of the Coker Unit both at the time of the Appraisal Agreement's execution and at all pertinent times thereafter; (2) even at the time that Valero Refining was a lessee of the Coker Unit, it was contractually obligated to pay property taxes on

---

3. The District and Board also moved for traditional summary judgment, as did the protesting parties. However, the trial court did not rule on these motions, but instead ruled only on the jurisdictional plea.

the unit; and (3) the protest to the reappraisals and second notice was filed jointly under the names of MHCB and Valero Refining, not under the name of Valero Energy.

The trial court granted the District's and Board's plea in part and denied it in part. The order recited:

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that [the protesting parties'] cause of action against [the District and Board] for breach of contract is hereby DISMISSED for lack of subject matter jurisdiction.

IT IS FURTHER ORDERED that the remaining grounds asserted in [the District's and Board's] Joint Plea to the Jurisdiction and Supplemental Plea to the Jurisdiction relating to (1) [the protesting parties'] claim that the [second notice] relating to the subject property was legally invalid, and (2) concerning [the protesting parties'] failure to follow necessary procedures for appeal and judicial review of appraised value,[4] are DENIED.

We construe this order to have dismissed for want of jurisdiction the protesting parties' Primary Allegations, which were based on the Appraisal Agreement, but to have retained their Alternative Allegations, which alleged that the reappraisals were excessive and unequal.

Both the protesting parties and the District and Board have appealed.

## Standard of Review

 A governmental unit may challenge the trial court's subject-matter jurisdiction by filing a plea to the jurisdiction. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d

636, 638 (Tex.1999). In deciding a jurisdictional plea, a trial court considers the plaintiff's pleadings and any evidence pertinent to the jurisdictional inquiry. *See Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554–55 (Tex.2000); *see also Tex. Natural Res. Conservation Comm'n v. White,* 46 S.W.3d 864, 867–68 (Tex.2001). We review *de novo* a trial court's ruling on a jurisdictional plea, construing the pleadings in the plaintiff's favor and looking to the pleader's intent. *See Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993).

## The District's and Board's Appeal

In three issues, the District and Board challenge the trial court's denial of their jurisdictional plea asserted against what they describe as the protesting parties' "suit for declaratory judgment."

### A. The District's and Board's Appellate Challenges

The District's and Board's appellate challenges evidence a partial misunderstanding of the effect of the trial court's ruling. The trial court's order dismissed the protesting parties' Primary Allegations, which included their claims for declaratory relief based on the statute governing appraisal agreements. What the trial court refused to dismiss were the protesting parties' Alternative Allegations, which challenged the reappraisals as excessive and unequal and which constituted a suit for judicial review of the District's and Board's adverse actions affecting the 2004 appraised value of the Coker Unit. Therefore, after the order, the only claims pending before the trial court were those

---

4. We construe the court's reference to the "failure to follow necessary procedures for appeal and judicial review of appraised val-

ue" to refer to the District's and Board's standing arguments.

constituting the suit for judicial review (the Alternative Allegations), which was not based on the Appraisal Agreement; in contrast, the order dismissed the claims seeking declaratory and injunctive relief based on the Appraisal Agreement (the Primary Allegations).

Only the District's and Board's third issue challenges the protesting parties' claims that the trial court did not dismiss: the Alternative Allegations that the reappraisals were excessive and unequal. The District's and Board's first and second issues, in contrast, challenge the protesting parties' *Primary Allegations,* which the trial court dismissed and which ruling is favorable to the District and Board.[5] We thus interpret the District's and Board's first and second issues as responsive arguments to the protesting parties' appellate challenges, and for this reason, we discuss the District's and Board's first and second issues in our discussion of the protesting parties' appeal. For these reasons, we also overrule the District's and Board's first and second issues, although we reach those issues' merits in our discussion of the protesting parties' appeal. We now address the District's and Board's third issue.

## B. Standing

■ In their third issue, the District and Board argue that the protesting parties did not have standing to protest the District's 2004 reappraisal and the second notice, or to seek judicial review of the Board's adverse ruling on that protest, because they did not follow the Tax Code's strict protest procedures. Specifically, they argue that either MHCB or Valero Refining—depending on which owned the Coker Unit at the relevant time—could protest the District's complained-of actions and seek judicial review of the Board's adverse decision on that protest, but not both parties.[6] This issue attacks the protesting parties' standing to assert the Alternative Allegations.

■ The Property Tax Code, contained within Title I of the Tax Code, provides:

> [P]roperty taxes are the personal obligation of the person who owns or acquires the property on January 1 of the year for which the tax is imposed.... A person is not relieved of the obligation because he no longer owns the property.

Tex. Tax Code Ann. § 32.07(a) (Vernon Supp.2006). Given that it has personal liability for property taxes, a property owner may protest, among other matters, a determination of the appraised value of the owner's property. *Id.* § 41.41(a)(1) (Vernon 2001). The property owner may also appeal (that is, seek judicial review of) an order of the appraisal review board determining its protest. *Id.* § 42.01(1)(A) (Vernon 2001). When the property's ownership changes after January 1 of, and before the deadline for filing a protest in, a given tax year, the new owner may pursue

---

5. In their first issue, the District and Board argue that the declaratory relief that the protesting parties sought was redundant of the protesting parties' suit for judicial review and was thus impermissible. In their second issue, the District and Board argue that the protesting parties could not avail themselves of a declaratory-judgment action merely to create jurisdiction that would otherwise not have existed in the trial court.

6. This challenge is slightly different from the standing arguments asserted in the District's and Board's jurisdictional plea. The reason for this change in the District's and Board's argument appears to be the protesting parties' belated assertion below that Valero Refining was the owner at all relevant times. Nonetheless, because standing affects subject-matter jurisdiction, and because one may not waive jurisdictional challenges, we review the District's and Board's challenge. *See Tex. Ass'n of Bus.,* 852 S.W.2d at 445–46.

a protest in the same manner as could the property owner who owned the property on January 1 of that year. *Id.* § 41.412(a) (Vernon 2001).

A property owner may, alternatively, designate a lessee or other person to act as its agent for any purpose under the Property Tax Code relating to the owner or its property. *Id.* § 1.111(a) (Vernon 2001). The designation of the owner's agent must be in writing, must be signed by the owner (among other authorized persons), and must also clearly indicate that the agent is authorized to act on the owner's behalf in tax matters relating to the owner or the property. *Id.* § 1.111(b) (Vernon 2001).

If the owner or its agent does not file a tax protest, then a person leasing real property who is contractually obligated to reimburse the property owner for property taxes may protest the property's appraised value. *Id.* § 41.413(b) (Vernon 2001). Either the owner (or its agent) or the lessee described in section 41.413 may file a protest, but both cannot do so. *See id.*

■■ One who is not the owner, the owner's designated agent, or an authorized lessee under section 41.413 lacks standing to protest an adverse appraisal decision. *See Tourneau Houston, Inc. v. Harris County Appraisal Dist.*, 24 S.W.3d 907, 909 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (owner or agent); *see also Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist.*, 46 S.W.3d 880, 886 (Tex. 2001) (indicating in dictum that whether one is authorized lessee under section 41.413 or is owner's designated agent under Tax Code section 1.111(a) is matter of standing, not capacity). Lack of standing to protest an ad valorem tax appraisal deprives a court of subject-matter jurisdic-

tion to entertain a suit for judicial review based on that protest because standing is a component of subject-matter jurisdiction. *See Tourneau Houston, Inc.*, 24 S.W.3d at 909 (holding that trial court lacked jurisdiction to consider suit for judicial review filed by entity that was neither owner of property nor owner's properly designated agent); *see also Texas Ass'n of Bus.*, 852 S.W.2d at 445–46 (holding that standing is component of subject-matter jurisdiction).

Valero Refining became the Coker Unit's owner after January 1, 2004, but before the deadline for filing a protest had passed-indeed, before any 2004 appraisal had been rendered for the Coker Unit. Therefore, Valero Refining had standing to protest the District's 2004 reappraisal and second notice. *See* TEX. TAX CODE ANN. § 41.412(a). The Property Tax Code makes no provision for both the current owner, under section 41.41, and the new owner, under section 41.412, to file a protest for the same property in a given tax year.[7] *See id.* §§ 41.41(a) ("A property owner is entitled to protest") (emphasis added), 41.412 (indicating that new property owner may file first protest or, on application to appraisal review board, may be substituted in pending protest for former owner). Accordingly, only Valero Refining, as the Coker Unit's new owner that filed the first protest for the 2004 appraisal, had standing to protest the District's and Board's actions; MHCB did not.

We sustain the District's and Board's third issue to the extent that they complain of MHCB's standing to protest the District's 2004 reappraisal and second notice, to seek judicial review of the Board's adverse decision on that protest, and thus to assert the Alternative Allegations,

7. The protesting parties argue that both MHCB and Valero were named in a single protest notice "out of an abundance of caution" simply because MHCB still owned the

Coker Unit on January 1, 2004. Although one joint protest was filed, there were, in effect, two protests submitted under one notice: MHCB's and Valero Refining's.

which concerned whether the 2004 appraisal was excessive and unequal. We overrule the District's and Board's third issue to the extent that they complain of Valero Refining's standing to take these actions.

### The Protesting Parties' Appeal

In their sole issue, the protesting parties challenge the trial court's granting of the District's and Board's jurisdictional plea against, and its dismissal of, the Primary Allegations, which were ultimately based on the Appraisal Agreement. In a nutshell, the protesting parties assert that these allegations, which they have at times described as a suit to enforce the Appraisal Agreement with the District, were not barred by governmental immunity from suit for the following reasons:

- the protesting parties did not seek monetary damages, but sought only declaratory and injunctive relief—with the exception of attorney's fees, which were not barred by governmental immunity from suit in a declaratory-judgment suit;
- the declarations that the protesting parties sought—that, by having breached the Appraisal Agreement, the District and Board acted outside of their statutory authority—did not require waiver of governmental immunity from suit;
- the declarations that the protesting parties sought were ones to interpret a governmental unit's or agency's authority, for which claims governmental immunity from suit did not apply or was waived; and
- even if governmental immunity from suit applied to their declaratory-judgment claims, the protesting parties could nonetheless seek enforcement of the Appraisal Agreement under the authority of *Texas A & M Univ.—*

*Kingsville v. Lawson,* 87 S.W.3d 518 (Tex.2002).

The protesting parties also argue that the relief that they sought under the Primary Allegations was not merely redundant of that which they sought in the Alternative Allegations in their suit for judicial review of the Board's final order.

### A. The Nature of the Protesting Parties' Primary Allegations

As for their Primary Allegations, the protesting parties sought only declaratory and injunctive relief, plus attorney's fees and court costs, in their suit challenging the District's and Board's reappraisals as violative of the statute governing appraisal agreements. That is, the protesting parties sought declarations that the District and Board exceeded their statutory authority by unilaterally rejecting the Appraisal Agreement (the District), reappraising the Coker Unit (the District), and ordering an even higher appraisal of the Coker Unit (the Board).

### B. Governmental Immunity From Suit

#### 1. Constructs of Immunity from Suit Applicable to the District

■ The District is a political subdivision of the State. TEX. TAX CODE ANN. § 6.01(c) (Vernon 2001). Governmental immunity, which is derived from the State's sovereign immunity, shields political subdivisions of the State from suit and liability. *Tooke v. City of Mexia,* 197 S.W.3d 325, 332 (Tex.2006).

■ "[G]overnmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Id.* "By entering into a contract, a governmental entity necessarily waives immunity from liability, ... but it does not waive immunity from suit." *Id.*

Instead, in suits for breach of contract and other claims for money damages, the judiciary has consistently " 'deferred to the Legislature to waive immunity from suit, because this allows the Legislature to protect its policymaking function.' " *Id.* (quoting *IT–Davy,* 74 S.W.3d at 854).

Notwithstanding the above constructs, there are certain suits that private citizens may maintain against the State without legislative permission. For example, private litigants may always sue the State, without legislative permission, for state officials' violations of state law because such violations are not considered to be acts of the State. *Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 404 (Tex.1997), *superseded by statute on other grounds as noted in Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 593 (Tex.2001). Therefore, "an action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars." *Id.* That is, such suits are "suits to determine a party's rights against the State," which do not require legislative consent, rather than "suits seeking damages," which do. *Id.*

Nonetheless, suits to establish a contract's validity, to enforce its performance, or to impose its liabilities are suits against the State that are precluded by the doctrine of immunity from suit. *IT–Davy,* 74 S.W.3d at 855; *Tex. S. Univ. v. State St. Bank & Trust Co.,* 212 S.W.3d 893, 903 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). One may not label such a suit as one for declaratory judgment merely to avoid the immunity-from-suit doctrine. *See IT–Davy,* 74 S.W.3d at 856; *Tex. S. Univ.,* 212 S.W.3d at 903. This

result obtains because the Declaratory Judgment Act ("DJA") does not itself "extend a trial court's jurisdiction" or "change a suit's underlying nature." *Tex. S. Univ.,* 212 S.W.3d at 903 (citing *IT–Davy,* 74 S.W.3d at 855).

### 2. Constructs of Immunity from Suit Applicable to the Board

Likewise, persons aggrieved by the action of an administrative agency, like the Board,[8] have no absolute right to challenge that agency's action in court. *Helton v. R.R. Comm'n,* 126 S.W.3d 111, 116 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). "The doctrine of sovereign immunity [from suit] is the rationale that underlies" this prohibition: "[a] suit against a state agency is a suit against the State, which, as sovereign, cannot be sued without its consent." *Id.* Therefore, for a person aggrieved by an administrative agency's decision to sue in court, a statute must generally allow for judicial review of the agency's decision, and one must follow that statute's mandates. *See id.*

There are, however, some well-settled exceptions to this general rule. One such exception is that, even in the absence of a statute that allows for judicial review, one may challenge in court an agency action that exceeds the agency's jurisdiction. *See Hitchcock v. Bd. of Trustees of Cypress–Fairbanks Indep. Sch. Dist.,* 232 S.W.3d 208, 218–19 (Tex.App.-Houston [1st Dist.] 2007, no pet.); *MAG–T, L.P. v. Travis Cent. Appraisal Dist.,* 161 S.W.3d 617, 625 (Tex.App.-Austin 2005, pet. denied).

Despite this and other exceptions to the exhaustion-of-remedies requirement, when a statute provides a

---

8. *See* TEX. TAX CODE ANN. § 6.41(a) (Vernon Supp.2006) (establishing appraisal review boards for each appraisal district); *Cameron*

*Appraisal Dist. v. Rourk,* 194 S.W.3d 501, 501–02 (Tex.2006) (describing appraisal-review-board proceeding as administrative).

means to attack an agency's order, one may not maintain a declaratory-judgment action that seeks remedies that are merely redundant of those available by the statutory means. *See Strayhorn v. Raytheon E-Sys.*, 101 S.W.3d 558, 572 (Tex.App.-Austin 2003, pet. denied). Additionally, just because an agency determination is wrongly decided does not render that decision outside the agency's authority (the third exception listed above): an incorrect agency determination rendered *pursuant* to the agency's authority is not a determination made *outside* that authority. *See Williams v. Houston Firemen's Relief & Ret. Fund,* 121 S.W.3d 415, 430 (Tex.App.-Houston [1st Dist.] 2003, no pet.) ("Williams does not challenge the fact that the Fund has ... this statutory authority. Regardless of his phrasing it in terms of 'authority' ..., the crux of Williams's argument is that the trustees interpreted the statute in a way they should not have. This is a complaint of 'getting it wrong,' not of acting outside statutory authority.") (footnote omitted); *Tex. Comm'n of Licensing & Regulation v. Model Search Am., Inc.,* 953 S.W.2d 289, 292 (Tex.App.-Austin 1997, no writ).

## C. The Property Tax Code's Protest Scheme

A statute is construed to waive a governmental entity's immunity from suit only if the waiver is by clear and unambiguous language. TEX. GOV'T CODE ANN. § 311.034 (Vernon 2005); *City of LaPorte v. Barfield,* 898 S.W.2d 288, 291 (Tex.1995). Such a statutory waiver exists in the Property Tax Code for property-owner contests to certain appraisal decisions of appraisal review boards. That waiver takes the

form of administrative remedies to exhaust, which we set out below.

A property owner, the owner's designated agent,[9] the owner's authorized lessee,[10] or a person acquiring the owner's property within a certain time frame[11] may file a protest to the appropriate appraisal review board of, among other matters not relevant here, a determination of the appraised value of the property, an unequal appraisal of the property, or "any other action of the chief appraiser, appraisal district, or appraisal review board that applies to and adversely affects the property owner." TEX. TAX CODE ANN. § 41.41(a)(1), (2), (9) (Vernon 2001). The property owner (or others mentioned above) initiates the protest by filing a notice of protest with the appraisal review board. *Id.* § 41.44 (Vernon Supp.2006). After the filing of a notice of protest, the appraisal review board must hold a hearing, of which it must timely notify the protesting party. *Id.* § 41.45(a)-(d) (Vernon 2001); *id.* § 41.46 (Vernon 2001), *amended by* Act of May 22, 2007, 80th Leg., R.S., ch. 626, § 3, 2007 Tex. Sess. Law Serv. ——, ——. With certain exceptions inapplicable here, in a protest of the property's appraised value or of an unequal appraisal of the property, the appraisal district has the burden of establishing both the property's value and the appraisal's equality. *Id.* § 41.43(a), (b) (Vernon Supp.2006). Once it has reached a decision on the protest, the appraisal review board must issue a written order embodying its decision. *Id.* § 41.47(a) (Vernon 2001).

Within 45 days of its having received notice of a final, appealable order by the appraisal review board on its protest, the protesting party may seek judicial review of that order. *Id.* §§ 42.01(1)(A), 42.015,

---

9. *See* TEX. TAX CODE ANN. § 1.111(a).

10. *See id.* § 41.413.

11. *See id.* § 41.412(a).

42.21 (Vernon 2001). Judicial review is by trial *de novo*. *Id.* § 42.23(a) (Vernon Supp.2006). In that suit for judicial review, the trial court "may not admit in evidence the fact of prior action by the appraisal review board ..., except to the extent necessary to establish its jurisdiction." *Id.* § 42.23(b) (Vernon Supp.2006). The trial court's decision in such a suit for judicial review may (1) fix the appraised property's value, (2) enter orders ensuring equal treatment under the law, or (3) "enter other orders necessary to preserve rights protected by and impose duties required by the law." *Id.* §§ 42.24, 42.25, 42.26 (Vernon 2001 & Supp.2006). The protesting party who prevails in a suit for judicial review concerning the property's appraised value, or concerning an unequal appraisal for the property, may be awarded reasonable attorney's fees not exceeding certain fixed amounts. *Id.* § 42.29 (Vernon 2001).

■ With certain exceptions inapplicable here, the "procedures prescribed by this title [the Property Tax Code] for adjudication of the grounds of protest authorized by this title are *exclusive*, and a property owner may not raise any of those grounds: ... as a basis of a claim for relief in a suit by the property owner to arrest or prevent the tax collection process or to obtain a refund of taxes paid." *Id.* § 42.09(a)(2) (Vernon 2001) (emphasis added). The failure to exhaust the Property Tax Code's exclusive, administrative remedies deprives the trial court of jurisdiction to review most adverse ad valorem tax decisions. *See* Tex. Gov't Code Ann. § 311.034 (Vernon Supp.2006) ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."); *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex.2006); *Midland Cent. Appraisal Dist. v. Plains Mktg., L.P.*, 202 S.W.3d 469, 474–75 (Tex. App.-Eastland 2006, pet. denied).

## D. The Property Tax Code's Provisions Concerning Appraisal Agreements

■ The Property Tax Code contemplates agreements between property owners and appraisal districts' chief appraisers. The Code first mentions such appraisal agreements in its general provisions relating to the appointment of agents to represent the property owner in certain circumstances:

> (e) An agreement between a property owner or the owner's agent and the chief appraiser is *final* if the agreement relates to a matter:
>
> > (1) which may be protested to the appraisal review board or on which a protest has been filed but not determined by the board; ...

Tex. Tax Code Ann. § 1.111(e)(1) (Vernon 2001) (emphasis added). Given our standard of review, we must assume that section 1.111(e)(1) governed the Appraisal Agreement here because that agreement concerned a matter (*i.e.*, the appraised value for the Coker Unit) that could have been protested to the Board.[12] *See id.;*

12. For purposes of our discussion, we assume without deciding that Lehn's entering into the Appraisal Agreement was the equivalent of the chief appraiser's having done so and that Novosad, who was employed by Valero Energy (Valero Refining's corporate parent) could validly act as Valero Refining's section–1.111(a) agent for purposes of entering into the Appraisal Agreement. *See* Tex. Tax Code Ann. § 1.111(e) (providing for agreement between appraisal district's *chief appraiser* and property owner *or owner's agent*); *cf. Tourneau Houston, Inc.*, 24 S.W.3d at 909 (holding that subsidiary corporation that was not designated as parent corporation's section–1.111(a) agent could not seek judicial review of appraisal board's decision). These matters go to the merits of the protesting parties'

*see also id.* §§ 41.01(a)(1) (Vernon 2001) (providing for appraisal review boards to determine property owners' protests), 41.41(a)(1) (allowing for owner's protest of property's appraised value). Section–1.111(e) agreements are final, even without approval or adoption by the appraisal board. *See* TEX. TAX CODE ANN. § 1.111(e)(1); *BPAC Tex., LP v. Harris County Appraisal Dist.,* No. 01–03–01238–CV, 2004 WL 2422033, at *3 (Tex.App.-Houston [1st Dist.] Oct. 28, 2004, no pet.) (mem.op.).

In fact, the Property Tax Code precludes an appraisal review board from even reviewing such agreements. "In 1993, the Legislature amended section 1.111(e) by deleting the previous requirement that the Board must approve of the agreement before it became final." *Sondock v. Harris County Appraisal Dist.,* 231 S.W.3d 65, 69–70 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (citing Act of May 28, 1989, 71st Leg., R.S., ch. 796, § 2, 1989 Tex. Gen. Laws 3591, 3591, *amended by* Act of May 30, 1993, 73rd Leg., R.S., ch. 1031, § 1, 1993 Tex. Gen. Laws 4440, 4440 (current version at TEX. TAX CODE ANN. § 1.111(e))). By making this change, the Legislature "intended to make it easier for parties to reach agreements in the event of a dispute involving taxable property." *Id.* Therefore, under the current statutory scheme, an appraisal review board may determine property owners' protests generally,[13] but it "may not review or reject an agreement between a property owner or the owner's agent and the chief

appraiser under Section 1.111(e)." TEX. TAX CODE ANN. § 41.01(b) (Vernon 2001); *see Matagorda County Appraisal Dist. v. Coastal Liquids Partners, L.P.,* 165 S.W.3d 329 331 (Tex.2005) (noting, in dictum, that appraisal review board "has no authority to change a settlement reached by a taxpayer and the chief appraiser").

■ The result of the above statutes is two-fold. First, appraisal agreements between property owners and chief appraisers are final and cannot be reviewed or rejected by appraisal review boards. *See* TEX. TAX CODE ANN. §§ 1.111(e), 41.01(b). Second, the Property Tax Code allows a property owner to seek judicial review of only limited types of orders, including one by the appraisal review board determining the owner's protest. *Id.* § 42.01(1)(A). But because an appraisal review board cannot review a section–1.111(e) agreement, it necessarily cannot render an order resolving a protest based on a review of that agreement. *See id.* § 41.01(b). If the appraisal review board cannot render an order resolving a protest based on a review of an appraisal agreement, then the property owner cannot file a suit for judicial review under Tax Code chapter 42 (which, generally speaking, allows judicial review of board orders) of matters relating to an appraisal agreement. *See BPAC Tex., LP,* 2004 WL 2422033, at *3 (concluding that taxpayer was not deprived of due process by being precluded from seeking section 42.01(1)(A) judicial review of board's order setting property's appraised value at value to which taxpayer had

---

Primary Allegations based on the allegedly valid Appraisal Agreement, and we may not consider the merits of such matters in an interlocutory appeal from the granting of a jurisdictional plea. Moreover, we must take as true the factual allegations in the protesting parties' petition and construe it in their favor, and, fairly read, that petition implied that the parties' agents entered into the Ap-

praisal Agreement. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (providing that, in review of ruling on jurisdictional plea, court must construe pleadings in plaintiff's favor and look to pleader's intent).

13. TEX. TAX CODE ANN. § 41.01(a)(1) (Vernon 2001).

agreed under section 1.111(e): that order was not one "determining a protest by the property owner," from which section 42.01(1)(A) allowed review, because the section–1.111(e) agreement became final without board's approval); *accord Sondock*, 231 S.W.3d at 69–70. That is, the Property Tax Code makes such section–1.111(e) agreements final and not subject to protest by the property owner or subject to a property owner's statutory suit for judicial review under chapter 42. *See* Tex. Tax Code Ann. § 41.01(b); *BPAC Tex., LP*, 2004 WL 2422033, at *3; *Sondock*, 231 S.W.3d at 68–70.

### E. Analysis

#### 1. Whether the Protesting Parties' Primary Allegations Are Contract Claims that Sovereign Immunity from Suit Bars

The protesting parties implicitly recognize that Tax Code section 42.01 does not provide for suit for judicial review of the Appraisal Agreement itself because they do not assert that their Primary Allegations, which are based on the Appraisal Agreement, are part of their statutory suit for judicial review. Neither have the protesting parties argued that the Property Tax Code otherwise waived governmental immunity from suit for their Primary Allegations. Rather, they have consistently argued that their Primary Allegations—despite having their genesis in the Appraisal Agreement—were claims to which governmental immunity from suit (and the requirement to exhaust administrative remedies) did not apply. That is, the protesting parties have attempted to show jurisdiction over their Primary Allegations by demonstrating that those allegations fit into an exception to governmental immunity from suit and the exhaustion-of-remedies requirement derived from it-specifically, that the District, by reappraising the Coker Unit and issuing the second notice in violation of the Appraisal Agreement, and the Board, by reappraising the Coker Unit in violation of the Appraisal Agreement that the District could not reject, acted outside their statutory authority. *See Fed. Sign*, 951 S.W.2d at 404; *Helton*, 126 S.W.3d at 116.

In response, the District and Board first argue that the protesting parties cannot avail themselves of a declaratory-judgment action merely to create jurisdiction that would otherwise not exist in the trial court. Specifically, the District and Board argue that the protesting parties' lawsuit is merely a suit for breach of contract and for "damages" (in the form of lessened tax liability)—both of which claims are barred by governmental immunity from suit—disguised as a suit for declaratory relief. Among other things, the District and Board argue that

> [i]t is clear from [the protesting parties'] pleadings that they are not simply seeking a determination that [the District] exceeded its authority in issuing the Second Notice. Rather, they are seeking a determination that [the District] exceeded its authority by issuing the Second Notice *due to the existence of a purported contract.* Thus, [the protesting parties] are seeking declarations that a contract exists and that by acting contrary to the alleged contract, [the District and Board] exceeded their statutory authority.... [The protesting parties'] claim that [the District] acted outside of its statutory authority in issuing the Second Notice *is in truth an impermissible attempt to validate and enforce a contract against [the District and Board]. ...*

(Emphasis added.)

We agree with the protesting parties that their Primary Allegations do not implicate governmental immunity from suit

and that, therefore, no waiver of immunity from suit is required to maintain them.

▆▆▆ Let us begin at the beginning. The District and Board (and occasionally even the protesting parties) have characterized the Appraisal Agreement as a "contract." It is not: it is a statutory agreement. A contract requires, among other things, consideration, which is mutuality of obligation or a bargained-for exchange of promises. *See Fed. Sign*, 951 S.W.2d at 408–09. Not so an appraisal agreement under section 1.111(e): such an agreement requires only " 'the act of agreeing; harmony of opinion; accord.' " *Sondock*, 231 S.W.3d at 69 (quoting AM. HERITAGE DICT. OF THE ENGLISH LANGUAGE (4th ed.2006)).

▆▆ This distinction is important because, in the typical situation in which a private party contracts with a governmental unit, the former agrees to provide goods or services for which the latter agrees to pay or to tender something of value in return. This does not occur with an appraisal agreement. Virtually all of the authority on which the District and Board rely involves the typical contract between a private entity and a governmental unit, in which the latter agrees to pay (or to provide something of value) for something of value from the former.[14] It is understandable that the courts in those cases held that immunity from suit barred claims based on those contracts because the underlying purpose of governmental immunity from suit is "to shield the public from the costs and consequences of improvident actions of their governments," as well as to promote the following policies:

- "the handling of contract claims against the government involves policy choices more complex than simply waiver of immunity," including whether to rely on administrative processes and what remedies to allow;

- the government should not be kept from responding to changing conditions for the public welfare by prior policy decisions reflected in long-term or ill-considered obligations;

. . .

- the Legislature is able to deal not only with these policy concerns but also with individual situations in deciding whether to waive immunity by resolution, case[ ] by case, or by statute.

*Tooke*, 197 S.W.3d at 332 (quoting *Lawson*, 87 S.W.3d at 522).

**14.** *See Tooke v. City of Mexia*, 197 S.W.3d 325, 332–33 (Tex.2006) (considering suit for damages resulting from breach of contract); *Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704, 706 (Tex.2003) (holding that immunity from suit precluded claim for breach of contract for sale of county property and request for specific performance of contract); *Travis County v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 247–48 (Tex.2002) (considering suit for damages resulting from breach of contract); *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853–54 (Tex.2002) (considering suit for damages resulting from breach of contract); *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 595–96 (Tex.2001) (considering suit for damages resulting from breach of contract); *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 404–05 (Tex.1997) (holding that immunity from suit barred claim that, although couched in terms of suit alleging potential state-law violations, sought monetary damages for breach of contract); *Herring v. Houston Nat'l Exch. Bank*, 113 Tex. 264, 269, 253 S.W. 813, 814–15 (1923) (considering suit to recover from State on promissory notes); *Tex. S. Univ. v. State St. Bank & Trust Co.*, 212 S.W.3d 893, 902–03, 909 (Tex.App.-Houston [1st Dist.] 2007, pet. denied) (considering suit for damages for breach of contract and for declarations of contractual rights); *TRST Corpus, Inc. v. Fin'l Ctr., Inc.*, 9 S.W.3d 316, (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (considering suit for damages for, among other things, breach of contract and declarations of rights under contract).

In contrast, the protesting parties did not seek monetary damages, property, or services from the District and Board: rather, they sought declarations that the District's 2004 reappraisal and the second notice, issued after the District had rejected the Appraisal Agreement, was void and that any consideration by the Board of the appraised value was thus also void. *See & compare IT–Davy,* 74 S.W.3d at 853 ("Sovereign immunity protects the State from lawsuits for *money damages."*) (emphasis added). The basis for the protesting parties' arguing that the 2004 reappraisal and second notice were void was that section 1.111(e) deprives the District of authority to rescind an appraisal agreement. That is, they sought determinations that the District had acted contrary to law when it unilaterally rejected the Appraisal Agreement and that the Board had also acted outside its statutory jurisdiction in rejecting the agreed value because once an appraisal agreement had been made, the Board had no jurisdiction to review or to alter it. *See* TEX. TAX CODE ANN. § 41.01(b) (providing that appraisal review board "may not review or reject an agreement between a property owner or the owner's agent and the chief appraiser under Section 1.111(e)").

 Although the protesting parties' pleadings at times described this case as a suit to enforce a statutory agreement or even a "contract," their suit is actually one to determine whether a governmental unit is statutorily bound—as a taxpayer is [15]—to a section–1.111(e) appraisal agreement. It is, at its core, a suit to determine the meaning of section 1.111(e). A suit seeking an interpretation of a governmental unit's or administrative agency's statutory authority, and the related determination of whether that unit or agency is acting outside of that authority, is not a suit against the State (as long as money damages are not sought) and is thus not precluded by immunity from suit. *See Fed. Sign,* 951 S.W.2d at 404 (indicating that private litigants may sue State, without legislative permission, for state officials' violations of state law because such violations are not considered acts of State); *Cobb v. Harrington,* 144 Tex. 360, 365–66, 190 S.W.2d 709, 712 (1945) (distinguishing suit brought "by one whose rights have been invaded or violated by" officials' acts that are not lawfully authorized—which immunity from suit does not bar because such actions are not actions of State—from suit that "in essence is one for the recovery of money from the State or in which a judgment would be satisfied by the payment out of funds in the State treasury," which immunity from suit bars). Accordingly, a plaintiff may maintain such a suit without first exhausting administrative remedies or obtaining legislative permission to sue. *See Fed. Sign,* 951 S.W.2d at 404; *Hitchcock,* 232 S.W.3d at 218 (indicating that one need not exhaust administrative remedies in order to sue for agency's acts exceeding its jurisdiction). Moreover, most of the policy considerations underlying immunity from contract suits are not implicated by the seeking of such relief.

For these reasons, this case is distinguishable from *W.D. Haden Co. v. Dodgen,* on which the District and Board rely. *See* 158 Tex. 74, 308 S.W.2d 838 (1958). In

---

**15.** *See Sondock v. Harris County Appraisal Dist.,* 231 S.W.3d 65, 68–9 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (holding that trial court did not err in rendering summary judgment for appraisal district, in suit for judicial review of appraisal review board's ruling appraising property's value pursuant to apprais-al agreement entered into during protest before board, because appraisal agreement was final and thus rendered any board orders irrelevant); *BPAC Tex., LP v. Harris County Appraisal Dist.,* No. 01–03–01238–CV, 2004 WL 2422033, at *3 (Tex.App.-Houston [1st Dist.] Oct. 28, 2004, no pet.) (mem.op.).

*Dodgen,* the plaintiff sought to force the State to abide by the original fee assessed under a license issued to the plaintiff, alleging that the original fee was part of the "contract" represented by the permit. *Id.* at 76–77, 308 S.W.2d at 839. There appears to have been no question that the State had the power to require a greater fee for the license generally and no argument that its increasing the fee contravened state law. Although the plaintiff couched its appellate arguments in terms of whether the unilateral amendment of the alleged contract was "lawfully authorized," the only question was whether the State would breach the alleged contract that the license represented by its increasing the fee, not whether the State would act contrary to statute in doing so. *See id.* at 77–78, 308 S.W.2d at 840. The *Dodgen* court held that the State was not so bound; in so holding, the court distinguished the case from those in which a plaintiff seeks to determine whether State officials are acting outside their statutory or constitutional authority. *See id.* at 78–79, 308 S.W.2d at 840 (distinguishing *Cobb,* 144 Tex. at 365–66, 190 S.W.2d at 712 (holding that suit by taxpayers alleging that they fell outside statutorily defined class subject to occupation tax, so that State's attempt to collect such tax from them was illegal, was not suit against State)).

In the case before us, the protesting parties in essence argue that section 1.111(e)—by the fact that it renders appraisal agreements "final" upon their making—deprives an appraisal district of the statutory authority to assess taxes contrary to that agreement.[16] This is not an allegation merely to enforce an agreement

against a governmental unit in the abstract, without a statutory basis for alleging that the governmental unit is bound to the agreement. Rather, it is an allegation that a governmental unit acted outside its statutory authority by unilaterally rejecting an agreement to which a statute allegedly bound it. Accordingly, the case before us does not fall within the rule of *Dodgen.* We thus hold that the trial court has subject-matter jurisdiction to consider whether section 1.111(e) precludes the District's (and thus the Board's) actions here. *See Cobb,* 144 Tex. at 365–66, 190 S.W.2d at 712.

■ The trial court dismissed all of the protesting parties' Primary Allegations for lack of subject-matter jurisdiction, despite their being requests for only declarative and injunctive relief based, ultimately, on the interpretation of section 1.111(e) and despite their seeking only a determination of whether the District and Board acted without authority in their respective actions. This was error for the reasons that we have indicated above. Under these circumstances, the DJA waives immunity from suit for the attorney's fees and court costs that the protesting parties also sought. *See Tex. Educ. Agency v. Leeper,* 893 S.W.2d 432, 446 (Tex.1994); TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997) ("In any proceeding under this chapter, the court may award *costs and reasonable and necessary attorney's fees* as are equitable and just.") (emphasis added).

**2. Whether the Protesting Parties' Primary Allegations Requesting Declaratory Relief Are Redundant of the Re-**

---

16. The same can be said of the protesting parties' allegations against the Board. The gist of those allegations is that, because the District's Chief Appraiser acted contrary to law in rejecting the Appraisal Agreement and issuing a second appraisal and notice, the second notice and appraisal were void, and the Appraisal Agreement remained intact; because the Appraisal Agreement remained intact, the Board also acted outside its jurisdiction in issuing an order that, in effect, rejected the still-valid Appraisal Agreement.

**lief Sought in Their Suit for Judicial Review (Alternative Allegations)**

■ The District and Board argue that the trial court lacked subject-matter jurisdiction of the Primary Allegations for the further, and independent, reason that the declaratory and injunctive relief that the protesting parties sought was merely redundant of the relief sought in their suit for judicial review—that is, in their Alternative Allegations—of the Board's order on their protest. *See Strayhorn*, 101 S.W.3d at 572 (indicating that when statute provides means to attack agency's order, one may not maintain declaratory-judgment action that seeks remedies redundant of those available by statutory means).

We disagree. The Texas Tax Code provides that the "procedures prescribed by this title [the Property Tax Code] *for adjudication of the grounds of protest authorized by this title* are exclusive...." TEX. TAX CODE ANN. § 42.09(a) (Vernon 2001) (emphasis added). Likewise, a property owner is entitled to appeal an order of the appraisal review board that determines "*a protest* by the property owner *as provided by Subchapter C of Chapter 41*" of the Texas Tax Code. *Id.* § 42.01(1)(A) (Vernon 2001) (emphasis added). Under chapter 41 of the Texas Tax Code, although a property owner has the general right to protest a "determination of the appraised value of the owner's property" and "any other action of the chief appraiser, appraisal district, or appraisal review board that applies to and adversely affects the property owner,"[17] that right of protest does *not* extend to a matter determined by a section–1.111(e) appraisal agreement. *See id.* § 41.01(b) ("The [appraisal review] board may not review or reject an agreement between a property owner or the

owner's agent and the chief appraiser under [Texas Tax Code] Section 1.111(e)."); *see also Sondock*, 231 S.W.3d at 69–70; *BPAC Tex., LP*, 2004 WL 2422033, at *3. In fact, an appraisal review board may not even *review* such an agreement, much less reject it. TEX. TAX CODE ANN. § 41.01(b); *see Matagorda County Appraisal Dist.*, 165 S.W.3d at 331 (noting that appraisal review board "has no authority to change a settlement reached by a taxpayer and the chief appraiser"). As discussed above, once a section–1.111(e) appraisal agreement has been reached, it becomes final instantly and without appraisal-board approval. *See* TEX. TAX CODE ANN. §§ 1.111(e), 41.01(b). Accordingly, any appraisal-board protest that is already pending on a basis on which agreement is reached becomes "irrelevant" (that is, moot), and, if no appraisal-board protest has yet been filed, any protest on a basis on which agreement was reached is thereafter precluded. *See Sondock*, 231 S.W.3d at 68–70; *BPAC Tex., LP*, 2004 WL 2422033, at *3. If the board cannot review a section–1.111(e) appraisal agreement—or determine a pending protest on a basis on which agreement has been reached under section 1.111(e)—then, logically, a protesting party may not seek judicial review under Texas Tax Code section 42.01 of matters relating to an appraisal agreement. *See Sondock*, 231 S.W.3d at 69–70; *BPAC Tex., LP*, 2004 WL 2422033, at *3.

What the protesting parties sought by their Primary Allegations were declarations related to the Appraisal Agreement: that the District acted illegally in unilaterally rejecting that agreement and, therefore, that the Board also acted outside its jurisdiction by "review[ing] or reject[ing]" an agreement that the District could not reject. *See* TEX. TAX CODE ANN. § 41.01(b). There is an open question, implicit in some

---

17. TEX. TAX CODE ANN. § 41.41(a)(1), (9) (Vernon 2002).

of the parties' discussion at oral argument and that we need not decide now, as to whether the Board, which is statutorily prohibited from "review[ing]" the Appraisal Agreement, could consider these challenges, which are based on the Appraisal Agreement, in the protesting parties' administrative protest. If these challenges lay outside the Board's jurisdiction, then the protesting parties' Primary Allegations would clearly not be redundant of the issues that could be raised in their suit for judicial review. In any event, the relief that the protesting parties seek under their Primary Allegations differs from that sought in their Alternative Allegations: in the former, they seek to hold the District to the Appraisal Agreement ($60,525,090) because the District (and thus the Board) allegedly acted outside statutory authority in rejecting the agreement; in the latter, they seek a determination, alternatively, that the appraised value in the Board's final order was excessive for the use of a flawed valuation formula and that, had the Coker Unit been appraised equally with comparable properties, its appraised value would have been $37,732,240. In light of the protesting parties' challenges and pleadings, we are not prepared to say that the relief that they sought in their Primary Allegations was, as a matter of law, completely redundant of what they could seek in their suit for judicial review.

### 3. Resolution

We hold that the trial court had subject-matter jurisdiction to consider the protesting parties' Primary Allegations and that it erred in dismissing those claims upon the jurisdictional plea of the District and Board.

We sustain the protesting parties' sole issue.

### What We Do Not Decide

We think it prudent to state what we do not decide by this opinion. First, as stated in footnote 12, above, we do not decide whether the Appraisal Agreement was, in fact, an agreement created under and subject to Texas Tax Code section 1.111(e). The trial court did not decide that matter because it related to the merits, which the trial declined to consider by having dismissed the Primary Allegations for want of jurisdiction. *See Fort Bend County v. Martin–Simon,* 177 S.W.3d 479, 484 (Tex. App.-Houston [1st Dist.] 2005, no pet.) ("When a trial court learns that it lacks jurisdiction to hear a cause, the court must dismiss the cause and refrain from rendering a judgment on the merits."). Additionally, for purposes of this interlocutory appeal, we must take as true the protesting parties' factual allegations that would support the Appraisal Agreement's being a section–1.111(e) agreement. *See Tex. Ass'n of Bus.,* 852 S.W.2d at 446 (providing that, in review of ruling on jurisdictional plea, court must construe pleadings in plaintiff's favor and look to pleader's intent).

Second, we do not determine the merits of the protesting parties' Primary Allegations, that is, whether the District violated section 1.111(e) by unilaterally rejecting the Appraisal Agreement and whether that violation rendered the second appraisal and notice void. By dismissing the protesting parties' Primary Allegations, the trial court declined to exercise its jurisdiction to make these legal determinations, and there is thus no ruling on the merits for us to review. *See Martin–Simon,* 177 S.W.3d at 484.

Third, we do not determine the open question, implicit in some of the parties' discussions at oral argument, as to whether the Board could consider the protesting parties' protest at all if, as the protesting parties assert, the District violated section 1.111(e) by rescinding the Appraisal

Agreement, so that the second appraisal and notice were void and the Appraisal Agreement remained intact. *See* TEX. TAX CODE ANN. § 1.111(e) (providing that appraisal agreements are final under some circumstances); § 41.01(b) (precluding appraisal review board from *"review[ing]* or reject[ing]" section–1.111(e) agreements) (emphasis added); *Matagorda County Appraisal Dist.,* 165 S.W.3d at 331 (noting that appraisal review board "has no authority to change a settlement reached by a taxpayer and the chief appraiser"). Neither do we determine whether, as the District and Board argued for the first time at oral argument, the Board had jurisdiction to determine the preliminary matter of whether the Appraisal Agreement bound the District. Because the trial court did not consider the merits of any of the protesting parties' Primary Allegations, because the District and Board did not assert this particular argument in their joint jurisdictional plea and did not brief the matter on appeal, and because the record does not show whether the Board considered at the protest hearing the Appraisal Agreement's validity for the reasons argued on appeal,[18] we do not consider these appellate arguments in this appeal. These matters are for the trial court to consider on remand, if they are raised.

### Conclusion

We rule as follows:

1. We reverse the complained-of order to the extent that it denied the District's and Board's jurisdictional plea against MHCB for lack of standing to assert the Alternative Allegations.

2. We further reverse the complained-of order to the extent that it granted the District's and Board's jurisdictional plea against the Primary Allegations of the protesting parties and dismissed those claims.

3. We remand the cause for the trial court

 a. to render an order granting the District's and Board's jurisdictional plea to the extent that that plea asserted that MHCB lacked standing to assert the Alternative Allegations,

 b. to render an order dismissing the Alternative Allegations asserted by MHCB,

 c. to render an order denying the District's and Board's jurisdictional plea to the extent that that plea attacked the protesting parties' Primary Allegations, and

 d. to conduct further proceedings consistent with this opinion.

18. The protesting parties' notice of protest to the Board alleged that the second notice was invalid for unspecified reasons, but the record does not show whether the Board considered the specific argument that the second notice was invalid because statute bound the District to the Appraisal Agreement.