

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00533-CV

Kenneth W. **ARTHUR**, et al.,
Appellants

v.

**UVALDE COUNTY APPRAISAL DISTRICT** and Alberto Mireles, Chief Appraiser,
Appellees

From the 38th Judicial District Court, Uvalde County, Texas
Trial Court No. 2012-04-28619-TX
Honorable Watt Murrah, Judge Presiding

Opinion by:     Jason Pulliam, Justice

Sitting:        Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice
                Jason Pulliam, Justice

Delivered and Filed:  May 20, 2015

REVERSE AND RENDER IN PART; AFFIRM AND REMAND IN PART

This is an appeal from the trial court's order: (1) sustaining appellees' (hereinafter referred to as "UCAD") plea to the jurisdiction on counterclaims; (2) granting UCAD's no-evidence motion for summary judgment on counterclaims; and (3) denying appellants' (hereinafter referred to as "the Arthurs") motion for summary judgment on their counterclaims.

## FACTS AND PROCEDURAL HISTORY

On April 16, 2012, UCAD brought suit against the Arthurs to recover purported delinquent ad valorem taxes on specific real properties for tax years 2010 and 2011. In answer to the suit, the

Arthurs asserted numerous defenses and two counterclaims, specifically, breach of agreement formed pursuant to Texas Tax Code § 1.111 and denial of due process. During litigation in March 2014, the Arthurs paid, "in dispute", the subject taxes and penalties so they could sell the subject properties. UCAD then filed a Fourth Amended Petition, in which it dropped its claims for the 2010 and 2011 tax years and asserted claims for delinquent taxes owed on some of the same and additional real properties for tax year 2013, only. The Arthurs then filed a motion for summary judgment on the substantive merit of their counterclaims. UCAD also filed a plea to the jurisdiction and a no evidence motion for summary judgment on the Arthurs' counterclaims, asserting the trial court did not have subject matter jurisdiction because the Arthurs failed to exhaust their exclusive administrative remedies provided under the Tax Code.

Following a hearing on UCAD's plea to jurisdiction and both parties' motions for summary judgment, and without making any delineating or specific findings on each of the motions, the trial court found it did not have subject matter jurisdiction to hear the Arthurs' counterclaims. In so finding, the trial court sustained UCAD's plea to the jurisdiction, granted UCAD's no evidence motion for summary judgment and denied the Arthurs' motion for summary judgment.[1] This action was then severed from the continuing live action on the 2013 taxes, and the Arthurs perfected this appeal on the trial court's final judgment.

---

[1] The trial court stated its ruling as, "I'm going to grant the District's motion, and deny the Defense motion." The trial court did not state which "District's motion" it intended to grant. However, in the trial court's order titled "Order Sustaining Plaintiff's Plea to the Jurisdiction, dismissing Defendants' Counterclaim, Granting Plaintiff's Summary Judgment Motion, and Denying Defendants' Summary Judgment Motion", it stated:

> [t]he court is of the opinion and finds this Court has no subject-matter jurisdiction in Defendants Kenneth W. Arthur and others' counterclaim. The Court is also of the opinion and finds that Plaintiff Uvalde County Appraisal District's motion for summary judgment should be granted as a matter of law. The Court is also of the opinion and finds that Defendants and Counterclaimants Kenneth W. Arthur and others' motion for summary judgment should be denied.

Because all parties proceeded as if the trial court sustained UCAD's plea to the jurisdiction, and the trial court did render a finding it did not have subject matter jurisdiction, the signed order will control, and this court will proceed as if the trial court rendered a finding it sustained UCAD's plea to the jurisdiction.

ANALYSIS

**(1) Plea to the Jurisdiction**

*Arguments of the Parties*

To support dismissal for lack of subject matter jurisdiction, UCAD first relies upon Tax Code Section 42.09 as the source of exclusive administrative remedy for any tax protest. That is, UCAD contends a taxpayer must first present any matter related to a tax protest to the appraisal review board and then appeal any adverse determination through the remedies provided within the Tax Code. Because the Tax Code administrative remedy is exclusive, and the Arthurs did not fulfill this requirement, UCAD asserts the trial court did not have subject matter jurisdiction to adjudicate any protest of the assessed taxes.

The Arthurs argue UCAD and the trial court mis-frame their counterclaims as matters of a "tax protest", but instead they assert causes of action reflecting a matter outside the exclusive remedies provided within the Tax Code. Thus, the Arthurs assert the trial court erred by dismissing their counterclaims for lack of subject matter jurisdiction. Because the Arthurs held a valid and binding agreement with UCAD, formed pursuant to Tax Code Section 1.111 through its Chief Appraisal Officer Alberto Mireles, the Arthurs assert they were exempt from complying with the prescribed administrative remedies therein. The Arthurs assert Tax Code Section 1.111 provides an alternative avenue for taxing districts and taxpayers to resolve conflicts pertaining to property tax matters by providing the opportunity to enter a binding agreement that obviates the necessity of presentation of a protest before the appraisal review board. The Arthurs further assert their only avenue to adjudicate and seek remedy for UCAD's breach of this agreement is in the court of law because the Tax Code does not provide for, nor anticipate remedy for, an appraisal district's breach of a Section 1.111 agreement. Therefore, should the claim be excluded from adjudication in the

trial court based upon failure to exhaust administrative remedies, the Arthurs assert they would be denied due process to adjudicate or seek remedy for UCAD's breach.

UCAD responds the Arthurs' purported agreement made pursuant to Tax Code Section 1.111 is invalid, and therefore, their counterclaims have no basis. UCAD asserts the only person its Chief Appraisal Officer, Alberto Mireles, communicated with about the Arthurs' properties was their employee, Patti Van Pelt. Because the Arthurs did not designate Van Pelt as their agent and file this designation with the appraisal board, as required in Section 1.111, UCAD contends Van Pelt had no written authorization to act as the Arthurs' agent, and therefore, the Arthurs have no agreement. Because the Arthurs have no valid agreement, UCAD asserts, again, they were not exempt from exhausting the requisite exclusive administrative remedy required within Section 42.09. Finally, to the extent the agreement was valid under Section 1.111, UCAD argues any guidance or direction, provided by the Comptroller of Public Accounts in Section 9.3044(f) of the Texas Administrative Code, irreconcilably conflicts with Tax Code Section 1.111, and therefore, should be disregarded.

### *Standard of Review*

A plea to the jurisdiction is a dilatory plea which challenges a trial court's authority to determine the subject matter of an asserted cause of action without defeating the merits of the case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). "Accordingly, while the underlying facts may form the context in which a plea to the jurisdiction is raised, the purpose of the plea is not to preview or delve into the merits of the case, but to establish a reason why the merits of the case should never be reached." *City of Houston v. Northwood Mun. Util. Dist. No. 1*, 73 S.W.3d 304, 308 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (citing *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554.).

The issue whether a trial court has subject matter jurisdiction is a question of law for the court, not a jury, to decide. *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226–28 (Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Appellate review of a trial court's ruling on a jurisdictional plea is conducted in a two-step sequential analysis. First, the issue whether the non-movant alleged facts sufficient to affirmatively demonstrate subject-matter jurisdiction is a question of law reviewed *de novo*. *Miranda*, 133 S.W.3d at 226. For this reason, appellate review begins with the non-movant's pleadings to determine if the alleged facts affirmatively demonstrate the trial court's jurisdiction to hear the cause. *See id*. The pleadings must be construed liberally in favor of conferring jurisdiction and look to the pleader's intent. *Id*. The plea to the jurisdiction may be granted only if the pleading, even after amendment, does not state a cause of action or contain sufficient facts upon which to invoke the trial court's jurisdiction. *Id*. at 226–27.

If the facts as pled are sufficient to invoke jurisdiction, then any remaining jurisdictional challenge is to the existence of jurisdictional facts. In this second step, determination of a jurisdictional plea generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c). *Id*. at 227–28. In this step, the court may consider facts and evidence confined only to that relevant to the jurisdictional issues raised. *Id*. (confirming the court's holding in *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555). Then, in a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action, and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. Even though the facts pertaining to the merits of the case and subject matter jurisdiction may be intertwined, the court must not determine the case merits. *Miranda*, 133 S.W.3d at 227–28. If examination of the evidence relevant to jurisdiction reveals a fact issue with regard to jurisdiction exists, then the plea must be denied and the issue resolved by the fact finder. *Id*.; *see also Univ. of*

*Tex. Health Sci. Ctr. at San Antonio v. Stevens*, 330 S.W.3d 335, 338 (Tex. App.—San Antonio 2010, no pet.).

Likewise, if evidence relevant to jurisdiction is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court must rule on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228. This determination of a trial court's jurisdiction based upon undisputed facts is reviewed *de novo*. *Id.*

*Application*

*Step One: Review of the Pleadings*

UCAD begins with a challenge to jurisdiction based upon the Arthurs' pleading. Specifically, UCAD contends the alleged facts do not affirmatively demonstrate the trial court's jurisdiction to hear the cause. UCAD argues the trial court lacked subject matter jurisdiction as a matter of law, pursuant to Texas Tax Code Section 42.09, which mandates exclusive administrative remedy for any matter of protest pertaining to ad valorem tax. Because this remedy is exclusive, the Arthurs were required to exhaust these administrative remedies on any tax protest before filing suit (counterclaim); the Arthurs did not present their protest to the appraisal review board, nor did they allege they did, and, for this reason, the Arthurs "forfeited their right to proceed upon their Counterclaim."

 *a. Section 42.09 Exclusive Remedy*

Thus, appellate review begins with scrutiny of the Arthurs' pleading, and UCAD's challenge turns on a matter of law. In their third amended answer and counterclaim, the Arthurs allege they held an agreement with UCAD, formed pursuant to Tax Code Section 1.111, under which the parties agreed upon the re-valuations for the Arthurs' properties. Specifically, the Arthurs allege: (1) UCAD agreed to withhold pursuing payment of the subject taxes while its Chief Appraisal Officer, Alberto Mireles, worked on calculating correct property values and the resultant

ad valorem taxes for tax years 2009, 2010 and 2011; (2) the Arthurs acted under this agreement and did not pay taxes in 2010 and 2011; (3) Mireles and Van Pelt concurred on the correct property values; and (4) UCAD breached this agreement by filing suit to collect delinquent taxes on properties and years that were covered under the agreement. The Arthurs assert they have no other avenue to pursue this breach of agreement claim, and thus, dismissal would amount to denial of due process.

"The Texas Constitution expressly allows the legislature to bestow exclusive original jurisdiction on administrative bodies." *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006) (citing Tex. Const. art. V, § 8). Pursuant to this power, the Texas Tax Code limits the general jurisdiction of the district courts and provides "detailed administrative procedures for those who would contest their property taxes." *Id.* A "'taxpayer's failure to pursue an appraisal review board proceeding deprives the courts of jurisdiction to decide most matters relating to ad valorem taxes.'" *Id.* (quoting *Matagorda Cnty. Appraisal Dist. v. Coastal Liquids Partners, L.P.*, 165 S.W.3d 329, 331 (Tex. 2005)). "The administrative procedures are 'exclusive' and most defenses are barred if not raised therein." *Cameron Appraisal Dist.*, 194 S.W.3d at 502 (citing TEX. TAX CODE ANN. § 42.09 (West 2008)).

Sections 41 and 42 (Subtitle F) of the Tax Code lay out the procedures required of, and remedies available to, taxpayers to protest matters related to property tax. Specifically, Sections 41.41 and 42.09 provide the professed exclusive administrative remedies pertinent to these facts. Section 41.41 provides the subjects or actions "[a] property owner is entitled to protest before the appraisal review board." TEX. TAX CODE ANN. § 41.41(a) (West 2015). Relevant to these facts, Section 41.41(a)(1) includes "determination of the appraised value of the owner's property." *Id*. at § 41.41(a)(1). As a catch-all, Section 41.41(a)(9) states a subject of protest is, "any other action of

the chief appraiser, appraisal district, or appraisal review board that applies to and adversely affects the property owner." TEX. TAX CODE ANN. § 41.41(a)(9).

Section 42.09 states:

REMEDIES EXCLUSIVE.
(a) Except as provided in Subsection (b) of this section, procedures prescribed by this title for adjudication of the grounds of protest authorized by this title are exclusive, and a property owner may not raise any of those grounds:
>     (1) in defense to a suit to enforce collection of delinquent taxes; or
>     (2) as a basis of a claim for relief in a suit by the property owner to arrest or prevent the tax collection process or to obtain a refund of taxes paid.
….
(c) For purposes of this section, "suit" includes a counterclaim, cross-claim, or other claim filed in the course of a lawsuit.

TEX. TAX CODE ANN. § 42.09 (West 2015).

Thus, as UCAD asserts, Tax Code Section 42.09(a) does require a property owner to present any grounds for protest of assessed taxes to an appraisal review board and mandates any failure to do so results in forfeiture of the right to assert a cause of action pertaining to the assessed taxes in a trial court. *See* TEX. TAX CODE ANN. § 42.09(a); *see also Houston Indep. Sch. Dist. v. Morris*, 355 S.W.3d 668, 675 (Tex. App.—Houston [1st Dist.] 2011), *judgm't rev'd on other grounds,* 388 S.W.3d 310 (Tex. 2012). However, while the Tax Code administrative procedure is a property owner's exclusive opportunity to raise a ground challenging an assessed property tax, when "[t]he basis of complaint in the trial court ... is not a ground of protest contained in the property tax code[,] ... section 42.09's exclusivity provision is not applicable and does not preclude the trial court from exercising subject matter jurisdiction over the lawsuit." *See Cameron Appraisal Dist.*, 194 S.W.3d at 502 (holding claim seeking declaration that tax is unconstitutional need not be brought administratively, but claim seeking to set aside individual tax assessment, even though premised on claim of unconstitutionality, must be brought administratively); *Dallas Cent. Appraisal Dist. v. 1420 Viceroy Ltd. P'ship*, 180 S.W.3d 267, 269–70 (Tex. App.—Dallas 2005,

no pet.) (holding claim of failure of tax office to provide required notice is not "ground of protest" anticipated by Tax Code); *see also Morris v. Houston Indep. Sch. Dist.*, 388 S.W.3d 310, 312–13 (Tex. 2012) (acknowledging instances when Section 42.09's exclusivity provision is not applicable).

Thus, the term "grounds of protest" as used within Section 42.09 and referenced in Section 41.41, controls the reach of Section 42.09's exclusivity provision and what matters fall within its purview. Therefore, this court must review the basis of the Arthurs' counterclaims as alleged to determine whether the substance is a "grounds of protest" as anticipated under the statute. *See Dallas Cent. Appraisal Dist.*, 180 S.W.3d at 269–70. If so, as a matter of law, the remedies provided within the Tax Code are exclusive and impeded the trial court's subject matter jurisdiction. If not, the trial court retained subject matter jurisdiction to adjudicate the substantive merits of the Arthurs' counterclaims. *See Cameron Appraisal Dist.*, 194 S.W.3d at 502; *Dallas Cent. Appraisal Dist.*, 180 S.W.3d at 269–70.

In construing the meaning of statute, an appellate court must begin with its language and interpret the statute according to the plain meaning of the language used. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006); *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). If the statute is clear and unambiguous, we must apply its words according to their common meaning without resort to rules of construction or extrinsic aids. *Shumake*, 199 S.W.3d at 284. The court must read the statute as a whole without giving effect to certain provisions at the expense of others. *Stanley Works v. Wichita Falls Indep. Sch. Dist.*, 366 S.W.3d 816, 823 (Tex. 2012).

We conclude the term "grounds of protest" to be of common meaning. The plain meaning of the term "grounds of protest" within the context of Tax Code Sections 41.41 and 42.09 means a basis of, or reasons for dispute of, any assessed taxes. *See* Black's Law Dictionary 723 (ground) (8th ed. 2004). This interpretation is facilitated by the specific guidance provided within Section

41.41, which lists the specific matters that fall within the scope of the statute, and thus, are required to be adjudicated therein as a "grounds of protest." *See* TEX. TAX CODE ANN. § 41.41(a)(1)-(9); *see also Dallas Cent. Appraisal Dist.*, 180 S.W.3d at 269. Review of these matters listed within Section 41.41 reveal the matters pertain to the basis of a determination of a property value or resultant tax or reasons to dispute such determinations and matters of avoidance due to an issue of ownership. *See* TEX. TAX CODE ANN. § 41.41(a)(1)-(9).

On the face of the complaint, the Arthurs assert they formed an agreement with UCAD allowed under the Tax Code, and UCAD breached this agreement. Thus, the substance of their complaint is UCAD breached an agreement. While the Arthurs' complaint does implicate an inherent disagreement with UCAD regarding the property values attached to the subject properties, and thus, the resultant ad valorem taxes to be assessed, the true substance of the complaint is that the parties reached an agreement to resolve this dispute; however, the dispute, itself, is not the substance of the Arthurs' complaint. Further, the Arthurs assert the absence of remedy in the Tax Code for this breach of agreement requires that they seek remedy in the trial court.

Under its plain meaning and context, we do not construe "grounds of protest" to include a taxpayer's claim that the appraisal district breached an agreement between the parties or a claim based in denial of due process. None of the subjects listed in Tax Code Section 41.41 include breach of agreement or denial of due process as a grounds of protest that must be raised within the parameters of the Tax Code's exclusive remedies. A breach of an agreement is not a basis to dispute property values or resultant assessed taxes, nor is breach of agreement a matter of avoidance listed within Section 41.41. *See* TEX. TAX CODE ANN. § 41.41(a)(1)-(9). While the purported agreement was formed within the context of the parties' efforts to calculate accurate property values from which to assess taxes, the breach-of-agreement counterclaim, in and of itself, is not a "grounds of protest" for any property taxes ultimately assessed.

While Section 41.41(a)(9) includes as a grounds for protest, "any other action that applies to and adversely affects the property owner," and this broad definition seems to encompass an allegation that the taxing authority breached an agreement, we, again, do not construe this to mean the Arthurs must have adjudicated a claim that the appraisal district breached an agreement before the appraisal review board, itself. The issue whether the appraisal district breached an agreement with the taxpayer cannot fall within the scope of subjects that must be adjudicated before the appraisal board, as this would force the taxpayer into an unfair adjudicative forum.

In fact, the Tax Code precludes an appraisal review board from even reviewing such agreements. "In 1993, the Legislature amended section 1.111(e) by deleting the previous requirement that the Board must approve of the agreement before it became final." *MHCB (USA) Leasing & Fin. Corp. v. Galveston Cent. Appraisal Dist. Review Bd.*, 249 S.W.3d 68, 83 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (quoting *Sondock v. Harris Cnty. Appraisal Dist.*, 231 S.W.3d 65, 69–70 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (legislative history omitted). Section 42.09 expressly provides the appraisal review board may not approve or change an agreement made pursuant to Tax Code Section 1.111. *See* TEX. TAX CODE ANN. § 42.09; *MHCB (USA) Leasing & Fin. Corp.*, 249 S.W.3d at 83. Thus, the agreements become final without approval or adoption by the appraisal review board. *Id.* "Therefore, under the current statutory scheme, an appraisal review board may determine property owners' protests generally, but it 'may not review or reject an agreement between a property owner or the owner's agent and the chief appraiser under Section 1.111(e).'" *Id.* at 83 (quoting TEX. TAX CODE ANN. § 41.01(b) (West 2001)). Additionally, "[n]othing in the text of Section 1.111(e) indicates that only the taxpayer should be bound by an agreement's terms or that the appraisal district may escape the effect of an agreement's finality based on other provisions of the Property Tax Code." *Bastrop Cent. Appraisal Dist. v. Acme Brick Co.*, 428 S.W.3d 911, 917 (Tex. App.—Austin 2014, no pet.).

Thus, under the plain terms of the statute, it appears Tax Code Sections 41.41 and 42.09 do not contemplate a counterclaim of breach of agreement or denial of due process as a "grounds of protest" required to be adjudicated before the appraisal review board. For this reason, the substance of the Arthurs' complaint does not fall within the purview of the exclusive remedies mandated by Tax Code Section 42.09. The Arthurs' assertions on the face of the pleading are sufficient to invoke the trial court's general subject matter jurisdiction. Therefore, as a matter of law, the Tax Code's exclusive remedies derived from Sections 41.41 and 42.09 are not applicable and do not preclude the trial court from exercising subject matter jurisdiction over the substance of the Arthurs' counterclaims of breach of an agreement formed pursuant to Section 1.111 and denial of due process.

*Step Two: Challenge to Existence of Jurisdictional Facts*

UCAD, next, challenges the existence of jurisdictional facts, contending the Arthurs did not comply with Section 1.111 to form a valid and binding agreement, and thus, the basis of their counterclaim is destroyed by virtue of this noncompliance. Specifically, UCAD asserts the only person its Chief Appraisal Officer, Alberto Mireles, communicated with about the Arthurs' properties was its employee, Patti Van Pelt. Because the Arthurs did not designate Van Pelt as their agent, in writing, and file this designation with the appraisal board, as required in Section 1.111, UCAD contends Van Pelt "had no written authorization to act as the Arthurs' agent, and therefore, the Arthurs have no agreement to exempt them from the requisite administrative remedy provided in Section 42.09." In this regard, UCAD does not challenge the existence or substance of the subject agreement, itself, but instead, challenges whether the Arthurs followed the proper procedure laid out in Section 1.111 to form a valid and binding agreement. Because they did not, UCAD asserts the agreement is not binding upon the appraisal district, and the Arthurs cannot use this agreement to exempt themselves from the prerequisite pursuit of administrative remedies.

In response, the Arthurs assert they did comply with Section 1.111. Because Van Pelt was an employee, the Arthurs assert they were not required to file a written designation of agent for Van Pelt to act on their behalf in property tax matters or to enter the purported agreement. The Arthurs assert the Texas Administrative Code Section 9.3044 provides guidance and directive in this regard.

> b.  *Validity of Agreement under Tax Code Section 1.111*

The parties' principal dispute is whether the Arthurs complied with Tax Code Section 1.111 to form a valid and binding agreement. In this instance, while the dispute centers on the existence of jurisdictional facts, these relevant jurisdictional facts are undisputed. The parties contest only the interpretation and applicability of pertinent law based upon these undisputed jurisdictional facts, which are: (1) during the relevant time period, Mireles was working with Patti Van Pelt to calculate a re-valuation of the subject properties, and; (2) Van Pelt was an employee of the Arthurs. Therefore, the court must look at the referenced applicable statute to determine whether it applies under these undisputed facts, and if so, whether the Arthurs complied.

Tax Code Section 1.111 exists to provide a taxpayer and the taxing authority an avenue to form permanent and binding agreements on any property tax matter, and thus, circumvent the necessity of the adjudicative process discussed previously. *See MHCB (USA) Leasing & Fin. Corp.*, 249 S.W.3d at 83. By eliminating the necessity that Section 1.111 agreements be approved by an appraisal board, "the Legislature 'intended to make it easier for parties to reach agreements in the event of a dispute involving taxable property.'" *See id.* (quoting *Sondock*, 231 S.W.3d at 69). Thus, "[a]n agreement under Section 1.111(e) contemplates the resolution of a dispute between the appraisal district and the taxpayer occurring at some point during the appraisal process." *Bastrop Cent. Appraisal Dist.*, 428 S.W.3d at 919.

Section 1.111 governs the procedure to be used in the event a property owner wishes to designate an agent to act on the owner's behalf in property tax matters or form an agreement binding under this Section. *See* TEX. TAX CODE ANN. § 1.111(a)-(i) (West Supp. 2014); *see also* Tex. Att'y Gen. Op. No. GA-0589 (2008). Among many other things, Section 1.111 requires that, in such situations, a property owner must designate an agent with authority to act on his behalf, the designation must be made in writing, and this designation must be filed with the appraisal district. TEX. TAX CODE ANN. § 1.111(b). The statute further provides the comptroller shall adopt rules to facilitate compliance with this section. *Id.* at § 1.111(h).

Pursuant to the directive granting it authority to adopt rules to facilitate compliance with Tax Code Section 1.111, the Comptroller of Public Accounts set forth requirements for a taxpayer's appointment of agent and the proper forms to be used to make this appointment. *See* 34 TEX. ADMIN. CODE § 9.3044 (Texas Comptroller, Representation of Property Owner). In 1990, acting under its authority provided in Tax Code Section 1.111(h), the comptroller amended Section 9.3044 of the Administrative Code to further clarify those persons who do not fall under the specific requirements of Tax Code Section 1.111. 15 Tex. Reg. 263 (1990) (to be codified as an amendment to 34 TEX. ADMIN. CODE § 155.44 (currently codified at 34 TEX. ADMIN. CODE § 9.3044)). Specifically, the comptroller added Subsection (j), which provides, "[a] property owner is not required to file a written designation of agent for a person who: … (3) is an employee of the owner … and is authorized by the owner to represent him….[in property tax matters]." *Id*. (currently codified at 34 TEX. ADMIN. CODE § 9.3044(f). Thus, pursuant to the guiding rules provided to facilitate compliance with Section 1.111, a taxpayer is not required to provide or file a written designation of an agent to confirm an employee's authority to act on the taxpayer's behalf if the person is so authorized to represent the taxpayer and operates within the scope of this

employment. *See id.*; *see also Harris Cnty. Appraisal Dist. v. Drever Partners, Inc.*, 938 S.W.2d 196, 198 (Tex. App.—Houston [14th Dist.] 1997, no pet.).

Here, it is undisputed that Van Pelt was the Arthurs' employee; Chief Appraisal Officer Mireles worked with Van Pelt to facilitate his re-valuation of the subject properties for the subject tax years; and Mireles acquiesced and assented to Van Pelt's authority to act on the Arthurs' behalf. The undisputed evidence of Mireles' letters to First National Bank, iterating these undisputed facts, shows Mireles acknowledged these facts and acknowledged that UCAD's attorney agreed to withhold collection of the subject ad valorem taxes while Mireles and Van Pelt worked on the re-valuations. Although UCAD admits Van Pelt was the Arthurs' employee and does not contest Van Pelt's authority to act on the Arthurs' behalf, the Arthurs also present uncontested evidence consisting of an affidavit from Barbara Arthur attesting that Van Pelt was an employee of the estate, and Arthur authorized Van Pelt to represent her and the estate in property tax matters.

Based upon these undisputed facts and the guidance of 34 Administrative Code Section 9.3044(f), the Arthurs were not required to file a written designation of agent to authorize Van Pelt to work on their behalf in this property tax matter, and thus, to form the purported agreement with UCAD. *See* 34 TEX. ADMIN. CODE § 9.3044(f). Section 9.3044(f) provides direction in this situation and specifically states employees do not fall with the stricture of Tax Code Section 1.111, which requires a written and filed designation of agent. *See* TEX. TAX CODE ANN. § 1.111(a). Further, the jurisdictional facts as alleged and the uncontested evidence consisting of Mireles' letters reveal Mireles acknowledged Van Pelt's status as an employee of the Arthurs, acted as if Van Pelt had authority to assist him and to represent the Arthurs in the re-valuation of the subject properties and was exempt, as an employee, from any requirement that the Arthurs file a written authorization. *See Harris Cnty. Appraisal Dist.*, 938 S.W.2d at 198.

Therefore, the Arthurs satisfied the requirements of Tax Code Section 1.111. Because Van Pelt was an employee, the Arthurs were not required to file a written designation of agent with the appraisal review board. As an employee, Van Pelt had authority to form an agreement with UCAD with regard to the property tax matters pertaining to the subject properties.

Thus, based upon the undisputed jurisdictional facts, UCAD's argument in support of the trial court's jurisdiction fails.

*c. Challenge to Administrative Code Section 9.3044*

UCAD presents final argument that Administrative Code Section 9.3044 must be disregarded because it is irreconcilably inconsistent with Tax Code Section 1.111. UCAD contends the Administrative Code expressly exempts certain people from compliance with the requirements of Tax Code Section 1.111, and thus, the Comptroller acted outside its authority and outside the legislative intent of Section 1.111 by providing an exemption. By creating this exemption, UCAD contends the Comptroller created an unreasonable construction and created ambiguity in the statute.

"'Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute.'" *Fin. Com'n of Texas v. Norwood*, 418 S.W.3d 566, 585 (Tex. 2013) (quoting *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993)). An agency's rules adopted within its statutory authority may not conflict with the laws of the state and must not create confusion regarding the legislative intent or construction of the statute it supports. *Fin. Com'n of Texas*, 418 S.W.3d at 585; *Tarrant Appraisal Dist.*, 845 S.W.2d at 823.

Administrative Code Section 9.3044 does not conflict with Tax Code Section 1.111, but instead, operates to promote efficient compliance. Section 9.3044 provides clarification as to those persons who do not fall within the strictures of Tax Code Section 1.111; however, this exception

does not directly conflict with any portion of Section 1.111. Section 9.3044 does not create confusion nor ambiguity, but simply provides clarity as to those persons who fall within the legislative intent behind the framework of Tax Code Section 1.111. This clarification is reasonable, given the Tax Comptroller's authority to facilitate efficient and effective compliance with the statute. Section 9.3044 does not directly conflict with any language within Tax Code Section 1.111 nor its intent and purpose. Therefore, we conclude Section 9.3044 is reasonable and should not be disregarded, as UCAD suggests.

Thus, UCAD's argument in support of the trial court's jurisdiction on this basis must fail.

We sustain the Arthurs' first appellate issue and hold the trial court erred by granting UCAD's plea to the jurisdiction because (1) the Arthurs' counterclaim asserting UCAD's formation and breach of a Section 1.111 agreement was not a matter that falls within the exclusive administrative remedies anticipated in the Tax Code; and (2) the Arthurs' purported agreement formed under Tax Code Section 1.111 was not rendered invalid by the Arthurs' failure to file a written designation of agent for their employee, Patti Van Pelt.

For the reasons stated, we reverse the trial court's granting of UCAD's plea to the jurisdiction and render judgment denying UCAD's plea to the jurisdiction.

### (2) UCAD's No-Evidence Motion for Summary Judgment

The Arthurs contend the trial court erred by granting UCAD's no evidence motion for summary judgment, in which UCAD asserts the same arguments presented in its plea to the jurisdiction. The Arthurs assert the trial court erred because this vehicle cannot be used to raise a jurisdictional challenge, and therefore, the trial court's action was error as a matter of law.

In *Green Tree Servicing, LLC v. Woods*, the Houston appellate court addressed the specific issue "whether it is error for a trial court to dispose of a case with prejudice based on a challenge to subject-matter jurisdiction in a no-evidence motion for summary judgment." *Green Tree*

*Servicing, L.L.C. v. Woods*, 388 S.W.3d 785, 792 (Tex. App.—Houston [1st Dist.] 2012, no pet.). After analysis of the reasons for placement of the shifting burden of proof in a plea to the jurisdiction and the conversion of this burden-placement in a no-evidence motion for summary judgment, as well as a discussion of the dangers and pitfalls in this alteration through the no-evidence vehicle, the *Green Tree Servicing* court ultimately held a trial court's subject matter jurisdiction cannot be challenged in a no-evidence motion for summary judgment. *Id*. at 792–94. In *Green Tree Servicing*, the court reasoned that allowing subject-matter jurisdiction challenges in no-evidence motions conflicts with the safeguards and presumptions that protect the trial court's jurisdiction, would deprive the trial court of jurisdiction without a showing that the court actually lacks jurisdiction, and would preclude the non-movant from removing any impediments to jurisdiction and then returning to court. *Id.* The *Green Tree Servicing* court was particularly concerned that allowing defendants to challenge subject matter jurisdiction by way of no-evidence motion would nullify the principles and directives established by the Texas Supreme Court in *Miranda*, as it would force the non-movant to "put on their case simply to establish jurisdiction" and would eliminate any burden on the movant other than to identify the specific ground he believes to be lacking evidentiary support. *Id.* at 793–94 (quoting *Miranda*, 133 S.W.3d at 228).

We find *Green Tree Servicing* to be well reasoned and persuasive, particularly in light of the procedural posture in this case. *Accord Thornton v. Ne. Harris Cnty. MUD 1*, 447 S.W.3d 23, 39 (Tex. App.—Houston [14th Dist.] 2014, pet. filed) (holding permitting a challenge to subject matter jurisdiction in a no-evidence motion for summary judgment improperly shifts the jurisdictional evidentiary burdens); *see also City of Austin v. Rangel*, 184 S.W.3d 377, 382 (Tex. App.—Austin 2006, no pet.) ("The defendant cannot simply deny the existence of jurisdictional facts and force the plaintiff to raise a fact issue."). It is well established the burden of proof in a jurisdictional challenge lies with UCAD, the challenger, to show the trial court's lack of subject

matter jurisdiction. *Miranda*, 133 S.W.3d at 226–28; *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555; *Green Tree Servicing*, 388 S.W.3d at 792. Permitting UCAD to challenge subject matter jurisdiction in a no-evidence motion for summary judgment improperly shifts the jurisdictional evidentiary burdens. Therefore, UCAD may not raise a jurisdictional challenge in a no-evidence motion for summary judgment.

*Harm Analysis*

Because appellate review of a trial court's ruling on a no-evidence motion for summary judgment is *de novo* and because the issue of subject matter jurisdiction can be raised for the first time on appeal, an appellate court must conduct a harm analysis. *See Green Tree Servicing*, 388 S.W.3d at 795. "If the trial court could have treated [the no-evidence] motion as a plea to the jurisdiction and granted it, the appellate court must affirm. Stated another way, if the record establishes that the trial court lacks jurisdiction, there is no harm." *Id.* However, the opposite is true as well: if the pleadings and the available record are sufficient to invoke the trial court's jurisdiction, the non-movant is harmed by the trial court's granting of jurisdictional plea within a no-evidence motion for summary judgment. *See id.*

As discussed, we have determined the Arthurs' pleading is sufficient on its face to invoke the trial court's general subject matter jurisdiction over their counterclaims, and UCAD's challenge to the undisputed jurisdictional facts, as a matter of law, also failed. For these reasons, we concluded the trial court's granting of UCAD's plea to the jurisdiction was in error. Because the pleadings and the available record are sufficient to invoke the trial court's jurisdiction, we conclude the error in granting UCAD's no-evidence motion for summary judgment based upon a jurisdictional challenge is harmful. *See* TEX. R. APP. P. 44.1(a); *Green Tree Servicing*, 388 S.W.3d at 796; *accord Thornton*, 447 S.W.3d at 39–41.

We follow the Houston 1st and 14th District Courts of Appeals and conclude a trial court's subject matter jurisdiction cannot be challenged in a no-evidence motion for summary judgment. Thus, we sustain the Arthurs' second issue, and, for the reasons stated, we hold the trial court erred by granting UCAD's no-evidence motion for summary judgment.

### (3) The Arthurs' Motion for Summary Judgment on Counterclaims

The Arthurs contend the trial court erred by denying their motion for summary judgment on their counterclaims because "[t]here is no factual dispute over the substance of the agreements." The Arthurs contend that, in the trial court, UCAD presented legal roadblocks for the Arthurs counterclaims but did not present any controverting evidence to raise a genuine issue of material fact on any elements of their counterclaims, nor did UCAD "argue in the trial court that the terms of the agreements were not exactly as the Arthurs say."

### *Standard of Review*

To prevail on a motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c); *accord Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). Thus, a plaintiff moving for summary judgment on its claims for affirmative relief must conclusively prove each element of its cause of action as a matter of law and must produce evidence that would be sufficient to support an instructed verdict at trial. *See Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972); *Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 04-13-00529-CV, 2014 WL 7185081, at *4 (Tex. App.—San Antonio Dec. 17, 2014, no pet.). While a trial court may grant summary judgment on liability, but submit any issue relating to damages to a jury for trial, an appellate court may not render such a judgment upon a finding of error. If liability is contested, an appellate court may not remand and order a trial solely on unliquidated

damages; the whole action must be remanded for further proceedings. TEX. R. APP. P. 44.1(b); *see* TEX. R. CIV. P. 166a(a).

Because all doubts as to the existence of a genuine issue of to a material fact are resolved against the movant, if resolution of the summary judgment motion involves "the credibility of affiants or deponents, or the weight of the showings or a mere ground of inference, the motion should not be granted." *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). In this light, evidence which favors the movant is not considered unless it is uncontroverted. *Id*. Further, uncontroverted testimony of an interested witness "does no more than raise a fact issue to be determined by the jury" unless "the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law." *Cochran v. Wool Growers Cent. Storage Co.*, 166 S.W.2d 904, 908 (1942). "After all the evidence has been sifted in this manner, the court must determine whether the movant is entitled to a judgment as a matter of law." *Id*.

In their third amended answer and counterclaim, the Arthurs assert the basis for their counterclaims and seek declaratory relief, requesting the trial court "declare the validity and effect of the agreements" and "request that the amount of any taxes they owed or may owe now be adjusted to include the credits to which they are due under the agreements." Thus, as the summary judgment movant on their own claim for declaratory relief, the Arthurs must produce conclusive evidence of the existence and the terms of a valid and enforceable agreement under Texas Tax Code Section 1.111. Further, if such is conclusively shown, because the Arthurs seek a declaration of the amount of refund to be assessed, and such constitutes unliquidated damages, the Arthurs must produce conclusive evidence of the relief sought, namely the specific amount of taxes paid, taxes owed and amount of refund, if any, for the taxes paid in the subject years.

Among other things, in support of their motion for summary judgment on their counterclaim of breach of agreement, the Arthurs present competent summary judgment evidence consisting of Mireles' deposition and some of the exhibits from Mireles' deposition and an affidavit from Patti Van Pelt. In his deposition, Mireles testified that beginning around July 2010, he agreed to work with Van Pelt to assess appropriate reduced property valuations for the subject properties in the subject tax years of 2009 and 2010, and later, added the 2011 tax year when negotiations extended to that time. Mireles testified he agreed to apply any credit for taxes paid for the 2009 tax year to the other years, if appropriate. Mireles attested UCAD's tax attorney "agreed to work with us" while he and Van Pelt worked to calculate appropriate property valuations and resultant tax assessments. Because extenuating circumstances and his busy work schedule distracted Mireles's attention, this negotiation and work on property valuations continued into 2012. Mireles testified to the eventual agreement reached with Van Pelt in approximately February 2012, regarding the percentage discounts to be applied to the previous valuations of certain subject properties. However, Mireles' deposition does not contain clear or unequivocal testimony regarding the resultant ad valorem taxes to be assessed on each of the subject properties based upon these newly calculated property valuations, or discounts. Nor does the record contain the corrected tax statements on all of the subject properties to show what taxes the Arthurs owed following application of the agreed-upon corrected property valuations.

The record does contain certain tax statements pertaining to some of the subject properties upon which, Mireles testified, he wrote the agreed-upon discounted property valuations. However, these tax statements do not provide a complete or clear and concise depiction of which specific properties these statements pertain to, or the amount of the resultant ad valorem taxes on all of the subject properties based upon the agreed-upon discounted property valuations.

The Arthurs also offer Van Pelt's affidavit and attachment thereto as further evidence of the agreed-upon property valuations and evidence of the correct tax assessments based upon this agreement. Van Pelt attests to her calculation of the correct tax amounts on each of the subject properties based upon the agreement with Mireles, as well as the "amount that UCAD owes [the Arthurs] as a refund if UCAD is required to honor the agreements Albert Mireles made …." Van Pelt's affidavit establishes "credits to which [the Arthurs] are entitled under the agreements with UCAD; and the differences or amounts due in refund on each of the properties." Van Pelt attests "the amount due [the Arthurs] as a refund is $105,046.20." This affidavit testimony evidence is uncontested and, in some part, even supported by Mireles' deposition testimony. However, this affidavit, alone, cannot support summary judgment in favor of the Arthurs.

First, because she is an interested witness, Van Pelt's affidavit may only raise a fact issue as to the appropriate ad valorem taxes to be assessed upon application of any agreed-upon discounted property valuations, unless an exception applies. *See Hunsucker v. Omega Ind.*, 659 S.W.2d 692, 697 (Tex. App.—Dallas 1983, no pet.) (holding an employee of a party is an interested witness); *see also Cochran*, 166 S.W.2d at 908. Second, an exception to the general rule does not apply because Van Pelt's affidavit does not offer clear and concise documentation and attestation regarding the basis of Van Pelt's calculation of the resultant ad valorem taxes based upon the agreed-upon discounted property valuations. The attachment to Van Pelt's affidavit reflects the resultant calculations; however, neither the affidavit nor the attachment offers explanation or basis of the calculation of any resultant ad valorem property tax assessment for this court to determine whether the affidavit is free from contradiction or inaccuracies.

Mireles' deposition corroborates Van Pelt's discussion of the agreed-upon discounts to be applied to the subject property values; however, Mireles does not discuss the resultant ad valorem taxes to be assessed based upon these corrected values. Further, the record, as a whole, constitutes

attendant circumstances in which Van Pelt's asserted final, correct tax assessment is contested. The fact that the suit was filed is sufficient to discern UCAD contests the amount of taxes the Arthurs assert are owed. In the petition, UCAD asserts the taxes, penalty, interest and attorney fees owed amount to $207, 866.28.

Based upon these evidentiary gaps and the contested, corrected property tax assessments, Van Pelt's affidavit does not fall within the exception to the general rule that her affidavit may only raise a fact issue as to the substantive matters it addresses. Therefore, the evidence produced is not sufficient to support summary judgment on the Arthurs' counterclaim of breach of agreement.

Finally, the Arthurs argue the denial of their summary judgment must be reversed because UCAD offered no competent summary judgment proof in rebuttal to the terms of the agreement. "An opponent's silence or failure to produce competent summary judgment evidence never improves the quality of a movant's evidence, nor relieves the movant's initial burden of proof." *Swilley*, 488 S.W.2d at 47. Because the Arthurs' summary judgment proof failed to conclusively establish entitlement to summary judgment as a matter of law, UCAD was not obligated to offer summary judgment proof in rebuttal. *See id.*

For these reasons, we overrule the Arthurs' third issue and affirm the trial court's denial of the Arthurs' motion for summary judgment on their counterclaims.[2]

## CONCLUSION

Based on the foregoing analysis, we sustain the Arthurs' first and second issues. In doing so, we REVERSE the trial court's judgment in which it sustains UCAD'S plea to the jurisdiction

---

[2] Because the Arthurs may pursue adjudication of their counterclaims for breach of agreement and denial of due process in the trial court, the trial court's summary judgment dismissing the counterclaim of denial of due process need not be addressed on this appeal.

and grants UCAD's no evidence motion for summary judgment and render judgment denying these motions.

We overrule the Arthurs' third issue, and thus, AFFIRM the trial court's judgment denying the Arthurs' motion for summary judgment. We REMAND the case for further proceedings in accordance with this opinion.

Jason Pulliam, Justice